| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 4:12-CR-295(6) |
| § | |
| JESUS ARCADIO CERON MUNOZ § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Jesus Arcadio Ceron Munoz's ("Munoz") Reconsideration Emergency Motion for Compassionate/Release/Reduction in Sentence for Individuals Who Are at Risk of COVID-19 Infection (#571), wherein Munoz requests that the court reduce his sentence due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government filed a response in opposition (#573). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.  Background

On June 29, 2016, Munoz pleaded guilty pursuant to a non-binding plea agreement to Count 1 of the Indictment, which charged him with Conspiracy to Import Five Kilograms or More of a Mixture or Substance Containing a Detectable Amount of Cocaine and to Manufacture and Distribute Five Kilograms or More of a Mixture or Substance Containing a Detectable Amount of Cocaine Intending and Knowing that the Cocaine Would Be Unlawfully Imported into the United States, in violation of 21 U.S.C. § 963. On January 4, 2017, the court sentenced Munoz to 135 months' imprisonment, followed by a 2-year term of supervised release. His conviction and sentence were affirmed on appeal on October 24, 2017. On April 27, 2020, Munoz filed a

motion for compassionate release seeking a reduction in his sentence due to the COVID-19 pandemic. On May 12, 2020, the Honorable Sean D. Jordan dismissed Munoz's motion for want of jurisdiction after finding that Munoz had failed to satisfy the threshold exhaustion requirement for compassionate release. In the instant motion, Munoz requests the court to waive the exhaustion of administrative remedies requirement, yet the record before the court indicates that he has satisfied the exhaustion requirement. Munoz is currently housed at Federal Medical Center Fort Worth, located in Fort Worth, Texas ("FMC Fort Worth"). His projected release date is December 4, 2024. Munoz is not a United States citizen, was extradited to the United States in 2016, and an immigration detainer has been lodged against him. Upon his release from custody, Munoz is to surrender to a duly authorized immigration official for deportation proceedings.

II.   Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under

> section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, No. 20-60473, 2020 WL 5249369, at *1 (5th Cir. Sept. 3, 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 2020 WL 5249369, at *1 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and

then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 2020 WL 5249369, at *1 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, the Government provides evidence that Munoz submitted a request for compassionate release based on the circumstances raised in the instant motion to the warden of the facility where he is housed.  On May 26, 2020, Warden Eric D. Wilson denied Munoz's request for compassionate release.  Although Munoz complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be

considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

In the instant motion, Munoz, age 47, contends that he is eligible for compassionate release due to his medical conditions, but he provides no supporting documentation. Munoz's claimed medical conditions include: severe degenerative joint disease, insomnia, hypertension, hyperlipidemia, pulmonary embolism, acute embolism, thrombosis of the veins, and paraplegia (requiring the use of a wheelchair). The USSG provides that extraordinary and compelling

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, according to Munoz's Presentence Investigation Report ("PSR") prepared in 2016, his medical history includes an appendectomy and treatment for gunshot wounds he sustained in Columbia in 2011, which perforated both of his lungs, impacted his vertebrae, spinal cord, and spinal column, and resulted in an irreversible spinal cord injury located at the T3 level. According to his PSR, Munoz further reported that he requires the use of diapers, his catheter must be changed every four hours, and he had constant, intense pain along the left side of his body. Nonetheless, this medical summary does not meet the criteria listed above.

The Government provided Munoz's BOP medical records for 2019 and 2020. Munoz's medical records confirm his history of insomnia, hypertension, hyperlipidemia, pulmonary embolism, acute embolism, paraplegia, and use of a wheelchair. Munoz's Health Problems summary report generated September 2, 2020, reveals that since March 7, 2017, Munoz's hypertension has been in remission and his pulmonary embolism and acute embolism have been resolved; since May 19, 2017, his insomnia has been in remission; and since September 20, 2017, his hyperlipidemia has been resolved.

Munoz is classified as a Care Level 3 inmate which denotes, as per a BOP Clinical Guidance Manual dated May 2019:

- Care Level 3 inmates are outpatients who have complex, and usually chronic, medical or mental health conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications.

- They may require assistance with some activities of daily living (ADLs) that can be accomplished by inmate companions. Stabilization of medical or mental health conditions may require periodic hospitalization.

The BOP Clinical Guidance Manual further explains that Activities of Daily Living include "eating, urinating, defecating, bathing, and dressing/undressing." According to Munoz's medical equipment inventory, he received a new 16" x 16" Invacare wheelchair in June 2020. Munoz also receives medical supplies, including wipes, gloves, straight catheters, diapers, lubricant, and chux to facilitate his caring for himself and changing his own catheter. In addition, Munoz is assigned a single cell on the first floor with a lower bunk. Moreover, in January 2020, a medical provider noted that Munoz has "Modified Independent Mobility via manual wheelchair; Independent with transfers and ADLs [Activities of Daily Living]." During a chronic care clinic visit on August 20, 2020, Herman Reyes, M.D., explained that Munoz is a "paraplegic and requires [a] wheelchair . . . has limited mobility. Can move arms but has pain. Has no mobility in legs or lower trunk." In this situation, Munoz's medical records indicate that his medical condition is not terminal (with an end of life trajectory within 18 months), that he can provide significant self-care, and that his medical needs are being met by a variety of providers at FMC Fort Worth.

The court acknowledges Munoz's serious medical conditions and his classification as "a complex chronic care patient." Munoz's circumstances, however, do not constitute an extraordinary and compelling reason under § 3582(c)(1)(A). Moreover, "compassionate release

7

is discretionary, not mandatory, and may be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Furthermore, granting Munoz compassionate release would fail to provide just punishment for his offense and promote respect for the law. Where, as here, the prisoner has engaged in serious criminal conduct for an extended period of time, the district court has discretion to deny compassionate release after weighing the evidence. *Id*. at 693-94.

In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a significant portion of his sentence. *Id*. at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id*. at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id*. Similarly, releasing Munoz after he has served only 4 years of his more than 11-year sentence would minimize the impact of his crime and the seriousness of the offense.

Munoz's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions

(A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").  In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Munoz for any "other" reason.  In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Munoz's situation.

Munoz maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates.  Munoz expresses concern regarding the spread of COVID-19 among the prison population.  Nevertheless, as of September 25, 2020, the figures available at www.bop.gov list 4 inmates (out of a total inmate population of 1,279) and 9 staff members at FMC Fort Worth as having confirmed positive cases of COVID-19, 619 inmates and 6 staff members who have recovered, and 12 inmates who have succumbed to the disease.  Thus, it appears that the medical facility where Munoz is housed is handling the outbreak appropriately and providing adequate care.  Indeed, Munoz is receiving a

9

high level of care. His medical records reveal that Munoz is currently prescribed 12 medications for his various afflictions, he is frequently examined, tested, and treated, many of his health issues have been resolved or are in remission, and he had surgery to address his hemorrhoids and rectal bleeding earlier this year. He is also receiving daily wound care for a pressure ulcer on his ankle and has been issued braces for both wrists.

Although Munoz expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Munoz, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and

compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Munoz has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. The nature and circumstances surrounding Munoz's offense of conviction entail his participation from 2002 through 2012 in a sophisticated, international drug-trafficking organization based in Bogota, Cali, and Medellin, Colombia, that exported hundreds of kilograms of cocaine from Colombia and Venezuela to customers in the United States and elsewhere, using assorted aircraft, ships, go-fast boats, and a variety of vehicles. He pleaded guilty to his involvement in a conspiracy to import, manufacture, and distribute 450 kilograms or more of cocaine with the intention that the cocaine would be unlawfully imported into the United States. Over at least a 10-year period, Munoz allowed coconspirators to use his vehicles to transport cocaine between Cali and Medellin, Colombia with the knowledge that the cocaine was destined to leave the country bound for the United States. In 2011, Munoz sustained gunshot wounds that rendered him a paraplegic, but that did not prevent him from continuing to engage in criminal activities until his arrest by Colombian authorities at the end of the conspiracy in December 2012. Moreover, as revealed in the Statement of Reasons, the court considered his health problems when crafting his sentence of 135 months,

which was at the bottom of the 135-168 months guideline range, with the recommendation that he be placed in a federal medical center. Based on the nature and circumstances of the offense of conviction, the court cannot conclude that Munoz would not pose a danger to any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 7,699 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Ambriz v. United States*, No. 4:20-CV-568-P, 2020 WL 3066861, at *2 (N.D. Tex. June 5, 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Munoz's track record is similarly a poor one. In light of his continued participation in the drug trafficking conspiracy, despite his paraplegia, the court cannot be assured that Munoz would not engage in similar behavior, if released. Moreover, because he will be returned to Colombia upon his release, Probation will be unable to supervise him, and his 2-year term of supervised release will be of no practical benefit.

In short, Munoz has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 2020 WL 1940570, at *4-5 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

III.  Conclusion

In accordance with the foregoing analysis, Munoz's Reconsideration Emergency Motion for Compassionate/Release/Reduction in Sentence for Individuals who are at Risk of COVID-19 Infection (#571) is DENIED.

SIGNED at Beaumont, Texas, this 25th day of September, 2020.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE